Caesars Development Company v. Stephen P. Crosby, et al. Good morning. I'd like to reserve two minutes, if I may. Thank you. Joan Luky, with me, Justin Wallace, for the Cronyism, if carried to the extreme, is a form of misconduct that gives rise to constitutional violations. That is what the plaintiffs alleged in this case, and that is what they seek the opportunity to prove. Time permitting, I hope to address three issues from our brief. The first, that this arises in the context of a motion to dismiss, despite the fact that the Memorandum and Order of Decision reads as if it were a Rule 56 decision. Hence, on this de novo review, all plausible allegations and all reasonable inferences are to be taken in favor of the plaintiffs. Second, that the plaintiffs had a clearly established property interest here in their contractual relationship with Suffolk Downs, which the court found to exist, and that that was infringed by defendants by virtue of their indirect state action, which the district court also noted, and which is carefully pled in this 74-page report. I want to get into that as a matter of law, but if you want to go on with your summary, I won't interrupt you doing that. I just want to come back to that clearly established contract right issue. Certainly, Your Honor. I would simply say the third point we hope to reach is, of course, the 11th Amendment point, that this is a case which seeks no monetary damages whatsoever and has no impact on the public fisc, and which involves prospective relief and ongoing injury. If the court would like me to begin with, or if you would like to begin with the question on the second issue about the property interest, I'm glad to address that, Your Honor. My question is this, and correct me if anything I say about the premises of Massachusetts law is incorrect, but I think I'm right that under Massachusetts law, number one, it's in the license that they seek. The decision is a discretionary decision. That's correct, Your Honor, and in fact, we make a point of alleging that we are claiming no right in the license. Right, and I understand that. And secondly, as I understand it, there can be no appeal from the merits of the Massachusetts law. There can be no appeal from the merits if there is a denial. Under those circumstances, I have difficulty in seeing that under Massachusetts law, there is a clearly established contract property right that may be asserted based on the contract between the Caesars and the, what is it, Suffolk. We'll call it Suffolk Downs SSR. Because if Massachusetts intended to recognize a property right in that contract, then the roadblock to litigating a denial and the roadblock to any claim of entitlement if certain conditions are met could pretty well be circumvented by just the kind of action that is going on in this case. Because although it is quite true that you say, well, what we want here is prospective relief. We want them to stop saying that we're no good. But in fact, in order to get to that point, one has to litigate certain merits of the proceeding up to that point. So it seems to me that if we assume Massachusetts law does recognize a property right in the contract between Caesars and Suffolk, then we are opening the door, in effect, to making an end run on what seems to be a clear state policy not to allow litigation about what is passed. What is your response to that? Well, Your Honor, first of all, Massachusetts is very clear, and Judge Gorton so found, that there is a protected property interest in a contract. That's Brown v. Sweeney. As a general proposition, I'm sure. There's no question about that. Correct. And then the important point, Your Honor, is once you have that underlying property interest, Massachusetts law is set forth in Kenny v. National Resources Department of Dennis, is that the party possessed of that interest has a right to fair administration of any public process. No question. I don't deny that either. I'm saying that it looks to me as though we may have a unique situation in Massachusetts law here for the reasons that I suggested. We have a contract relationship that does not give rise to an enforceable property interest, because if we recognize, or Massachusetts recognized the property interest in this kind of a contract, all the limitations on litigation could be circumvented. I respectfully disagree with you, Your Honor. If there is an established property interest and you are in a public process, then the possessors of that interest are entitled by law to fair administration of the process. That's the issue. And my point is, what I want you to address is, why does not the peculiar statutory provision or provisions in this case lead to the conclusion that this is a general rule of property interest in contract relation does not, in fact, form part of Massachusetts law? Why didn't they, in effect, make an exception to that general rule by the scheme of licensing? If we were looking for review of a license decision, Your Honor would likely be correct. We are not looking for review of a license decision. We are looking for perspective. You are looking for review of a portion of the licensing process up to the point at which your client felt compelled to withdraw. It's true. You're not going for the whole hog here, but you're going for part of the hog. And I thought Massachusetts law, it seems to me, implies the hog doesn't get into court. Your Honor, respectfully, I totally disagree with you. As you already know, there are also three other cases pending. You're entitled to take judicial notice of the cases filed by Revere, Somerville, and yesterday by the City of Boston. The only thing that doesn't get into court, and by the way, it appears it does get into court under a 30-A review in Massachusetts Administrative Procedure, notwithstanding that provision. But the only thing that theoretically, it's our Administrative Procedure Act, Your Honor. It's our State Administrative Procedure Act. You're still entitled to challenge everything about the process, but not the decision theoretically. What about the SJC's decision in the Abdao case, which seems to favor Justice Souter's view? Well, Your Honor, that was a different property interest from that which we're asserting. The SJC decision was there's no – I'm sorry. Yes, but the SJC decision was about whether the voters could repeal, which turned on the question of whether there was a cognizable property interest in being an applicant for the license, and the SJC rejects that and says there is no due process problem with voter repeal. Actually, what the – respectfully, what the SJC said was that there is no implied contract to receive a decision once the process has begun. It doesn't even say favorable versus unfavorable. It's just there is no implied contract. They were specifically responding to an opinion of the Attorney General, which said there was an implied contract once you had paid your filing fee to get a decision in the process. That's a very narrow issue. That's what the SJC addressed. In no way did they address the concept that if you have a property interest and you're in a public forum where personal cronyism should not be controlling the rights of applicants, that you're still entitled to a fair administration of the process. The only thing that CSERs are looking for against the official capacity defendants here is to have the suitability report, which is a product, we allege, and are entitled to acceptable bias on the part of the chairman who has direct control by statute over the bureau chief. That is what they seek to prevent from allowing that to stand. If this court says that is not possible under 1983, there is in essence no remedy available regardless of how egregious the conduct of individual commissioners acting officially might be. When you say there's no remedy available, you do have a common law count for intentional interference with advantageous relations. The district court dismissed that only because it chose not to exercise supplemental jurisdiction. So you've got that count in the state court and if your allegations are true, that count may very well be a good count. Your Honor, I agree it may very well be a good count, but that count gives us only the relief that is predominantly sought here that matters deeply to these plaintiffs who are among the largest casino operators in the world, is to have the report, which they say was a product of personal bias, removed from the public record to have in aid of that prospective injunction a declaration that the process was tainted. On the day that Mr. Crosby resigned, sorry, not resigned, recused himself and was asked to resign to appointing authorities other than the governor, on that day he stated that he recognized the appearance of his bias which he had kept undercover, secret from the public and unknown to Caesars at the time that it withdrew. On that day, it should have been overseen and controlled, could not be allowed to stand. That is the point here. The relief sought is simply to have a fair administration of the process and where there is no fair administration of that process, a public process on which the public trust depends. The only remedy rests with this court and that is why this action is in federal court under Section 1983. The allegations here are that the chairman of this commission, knowing back in 2012 that his personal friend and former business partner to whom he remained financially indebted for saving his company, was a 50% owner of a piece of property that would be the sole competitor to the license sought by SSR with Caesars as the operator. In those circumstances, at every step of the way, as you can read from the allegations in the third amended complaint, he interfered with the process. He showed bias of an unacceptable type, soliciting competition to go to the Everett site as opposed to allowing the Boston site to proceed on its own, encouraging Wynn Resorts to stay in when they contemplated withdrawing because of the Macau situation, allowing Mr. Wynn's personal request in a conversation that's actually prohibited by the Enhanced Code of Ethics of the commission to have the referendum go forward before the suitability determination, coming to Wynn's defense when it finally became public that federal and state law enforcement officials were looking into issues pertaining to hidden evidence. If you look to the third amended complaint, you will see in the month of October of 2013 alone, on the same day the Bureau determined that the felon owners had been hidden from the commission and that one of the record owners, a co-owner along with Mr. Lonis, Mr. Crosby's friend, one of the record owners was in a circumstance where he had backdated false documents. All of this occurred in a circumstance where there was nothing that Caesars knew or could have done about it. The public cannot be... We have reserved two minutes. Thank you, Your Honor. Good morning, Your Honors. John Steffan, Assistant Attorney General for the Defendants. The story that Caesars weaves is extraordinary, but it is threadbare at the critical juncture, and this is important to point out, because while Caesars contends that the IEB report, the Bureau's decision that is at the very center of this case, was the product of Crosby's alleged bias, there is no allegation that establishes any connection. There is no there-there. What the complaint alleges is that Crosby had a bias against the SSR application and that Karen Wells, the Director of the Bureau of Investigation, after a significant and lengthy investigation, issued a report that recommended that the commission find Caesars unsuitable. There is no allegation in the complaint on information and belief or otherwise that establishes that the report was the result of any kind of influence by Crosby. There is no allegation that Karen Wells herself was biased. There is no allegation that she stood anything to gain by the result of the report. In fact, the only allegation that shows that there is any connection between them on any kind of conference is alleged solely on information and belief. Caesars contends these allegations are nonetheless supported by other allegations in their complaint. This is false. The only allegation that is not alleged on information and belief that could purportedly support any kind of connection, any kind of factual basis that would show that Wells was the instrument of Crosby's investigation, is the fact that by statute, unless the authority is delegated, the Director reports to the Chair of the Commission. All right, so you're making an Iqbal plausibility absence of allegations argument, but what is the federal right that is involved in this lawsuit from your point of view? I believe, Your Honor, that the plaintiffs have failed to identify any federal right that gets them into this court. Certainly, the property interest, as we started today's arguments, has been a moving target throughout this case. It started in the District Court with a reliance on the property interest that was based on an implied contract theory. This was eliminated by the Supreme Judicial Court's decision in Abdow, and in the wake of that, which was the only property interest that the District Court, I would submit that the court identified and analyzed, the plaintiffs have now since moved to a new theory, which is not solely based on a contract property right, but instead a derivative property right in process that extends only as a result of the contract. And with due respect, Justice Breyer, in the process, it has been clearly established. I don't believe it's even supported by the Kenney decision. Well, in all candor, I agree with you, but I thought they were making a further property interest claim, and that is the property interest in effect a continuing relationship with, I forget the initials, SSR, which had at least a potential for advantage in the case of the case, and which at least perhaps might be valued by the amount of money that they had put into it. And I thought they were making the claim that there was a property interest in the continuing relationship with SSR based upon a future expectation. Am I wrong? Even if they are, Your Honor, I don't believe that that property right can be the basis for a federal claim here for the reasons that you cited earlier, which is that the object of any such agreement would be the procurement of a license, and there is by statute no property interest in the aim of that contract. So at root, what Caesars proposes is a legal principle that has no limitation. It would permit an unlimited end run around that bar to recovery of, to sue, to challenge a license decision. It would mean that even though SSR on its own could not sue for deprivation of a property interest in the license just because of an unfavorable decision, but Caesars could nonetheless create one solely on the back of its contract with SSR. This would undo the limitations that the legislature has set forth, and it  the statute. In the end, I would submit open the federal courts to a flood of litigation second-guessing agency decisions in this matter, because there would be no limit to that principle. Ms. Lukey referred to Chapter 30A State APA Act review. Is that available as to the ultimate license decision? And in this instance, it's not an avenue of review that Caesars has even sought. They have, in line with their practice, they went through. Well, of course, whether there's a federal right depends in part on the federal court's assessment of whether there are state provisions that provide relief and the adequacy of those provisions. Hence the state law claim that was dismissed without prejudice. What is your view on that? Could that proceed? And what remedies are available? Ms. Lukey has said that the remedies are inadequate there because they're not after damages. They're after striking this document, which will be harmful to them in the future applications from the record. I believe, Your Honor, there are more than adequate state law remedies at root. If what their claim is an interference with their business relationship with SSR, their remedies lie in a simple contract action. No, no, no. The remedy in this case that they are seeking is quite unusual. I would agree. There is a question of whether there might be a bit of a mismatch between the claims and the remedies. But that's the remedy they want. It's less about a continuing relationship with SSR than the notion that they have been publicly labeled now by a report that was issued. Okay? So is such a remedy available to them in the state system? Certainly. There is the state tort claim, which they have alleged. That would be a state court avenue at which they could seek to have this addressed. They have also the internal adjudicatory processes at the agency level, which they forewent. Are they of their own right, in other words, could they have had an adjudicatory hearing here if SSR had not asked for it? I'm not certain, Your Honor. Certainly if SSR did, and SSR did go forward with an adjudicatory hearing, which CSRS did not participate in. So in that instance, they certainly could have participated and elected not to. And I suppose your position here would be, and may be correctly, that in the absence of an allegation, let's assume that CSRS couldn't have headed the adjudication simply unless SSR asked for it. I suppose your position would be that there's no indication that CSRS asked SSR to go for the adjudicatory hearing. Or to participate in it. Pardon me? Is that correct? I believe that's right. I think that SSR went forward with it. CSRS acquiesced in SSR's request to withdraw from partnership from the participation in the operation of the proposed casino and from the application process. So the bottom line of that line of thinking is there is no claim here that they could not have had a state process to litigate the very issue that they wish to litigate here. That's my claim, yes, your honor. And how does that factor into the fact, to the circumstance that the commission had scheduled a suitability hearing for CSRS as a qualifier, not for SSR, which CSRS elected not to go forward with on the ground that the commission hadn't given them adequate time to prepare. Wouldn't a suitability hearing, if one had been held, have been a way of correcting any injustice in this report? Yes, it would have, your honor. On timing, was the report out before they had the prospect of the suitability hearing? Yes, it was, your honor. And is the report that would have been the subject of the suitability hearing, had it been requested? Well, the report, it's important to recognize, is a mere recommendation from the Bureau as to whether or not the commission itself would ultimately make a suitability determination. So in this instance, there was no ultimate finding by the commission of suitability or unsuitability. No, but the substance of the, as I understand the Chief Judge's question, and my question would be, the substance of what was in the recommendation would have been the subject of the suitability hearing. Yes, most certainly. Those were, in fact, the four items that were identified in the report. There were several items, and this is a significant point, because it goes to CSRS equal protection claims. There were four significant red flags that were identified by the Bureau in recommending that the commission find CSRS unsuitable. And those four issues, which would include not just the Gansevoort licensing issue, but also the hiring of an executive who'd entered into non-prosecution agreements, CSRS' shaky financial situation, and its mistreatment of a high-roller patron that had led to the New Jersey authorities fining CSRS. Those four red flags were all cited by the Director of the Bureau in the report as items that, it was the Bureau's opinion, the Director's opinion, that the commission should ask CSRS to explain, should, you know, had a hearing gone forward. But even if we take all of the allegations that CSRS has made in the light more than favorable to them, even if we overlook what I contend are fatal defects in the factual allegations that they have made and treat the mere speculative allegations as plausible, the claims that CSRS brings are still barred, both in their official capacity under the 11th Amendment and in the individual capacity under qualified immunity, because CSRS does not allege any ongoing violation of federal law. CSRS only identifies the existence of the record of a past decision. This seems to be 11th Amendment week in this court, and the issues around the 11th Amendment, especially in light of the Supreme Court's Verizon opinion a few years ago, are very difficult. I take it this is a sort of last argument, and you would give higher priority in many ways to the Supreme Court's argument. I believe sincerely that it is, while last, not nearly least among our arguments. Nice line. Thank you. I do also think that our case is very easily distinguishable from Verizon and the cases that fall in that column, because Verizon included a request for injunctive relief to stop the future enforcement of an order. And here, all of the conduct that is the subject of the complaint occurs in the past. It all was concluded prior to the filing of this suit. Well, is that fair? The conduct includes the maintenance of a public record, which is claimed to have significant consequences. The record of a past decision, I would submit, is substantially different from the existence of a continuing violation of law. The record of the decision is a matter now of public record, that it is online and otherwise. Yeah, that's sort of getting into the merits of it. But the claim is there is continuing palpable harm, and there's no reason to doubt the credibility of that assertion. They're going to be candidates for licensing in other states. The other states will look at the Massachusetts documentation. And I don't dispute that Caesars continues, that it alleges that it continues to feel the effects of the past decision. I dispute that effects alone are sufficient to establish a continuing violation. And you think that's an easy 11th Amendment? I didn't say it was an easy one, Your Honor. But nonetheless, I think effective. And I do think that the qualified immunity arguments are also strongly in our favor, especially where the legal principles at the root of both Caesars due process and equal protection claims cannot be said to be clearly established.  Thank you, counsel. Ms. Luecke. Time is brief. Mr. Stefan's arguments did not relate to the pleadings in this case. There is only the Third Amended Complaint. The process by which this was handled and by which the district court found the pleading showed that the Caesars entities were forced out by defendants appears in paragraph 63 through 71 of the Third Amended Complaint. They differ materially from what Mr. Stefan just said to you. This was a circumstance where a recommendation was made and instead of giving the minimum 30 days SSR, which requested at Caesars behalf a full hearing, was told they could have only 14 days. Caesars said it couldn't prepare and the commission said, or I should say as well as Mr. Crosby said, too bad. So that I would suggest to you, you really need to look at the pleadings here. Second, property interest for these purposes is determined under state law. I asked the court to review Kenny v. Natural Resources on this issue. Third, the relationship alleged was the right to their continuing relationship with SSR and the rights that that would have involved. That is recognized under Massachusetts law and it is state law that governs whether a protectable property interest exists for constitutional reasons. We have always alleged, contrary to what was just said to you, that the property right was in the contract with SSR, the right to continue. That is not a new allegation. It was there from the beginning. We further say that there is no state law remedy. Chapter 30A does not give us the right to the review that we are seeking here. 30A allows various challenges of the process for specific items. It does not allow a challenge of the report. But that's not even what your complaint asserts. Your complaint asserts a common law tort-based claim for interference with contract. Well, we assert eight counts of constitutional violations and one of the common law, Your Honor. One of the key questions, Ms. Lukey, is the inadequacy of the state court procedure. And thus far, the only thing you've said is that the remedy under 30A would be inadequate to get this website stricken. But what about the common law claim? You can't get equitable relief on an intentional interference with advantageous relations claim, Your Honor. There is no state claim that gives us the right to the injunction that we seek here. Literally none. And the State Civil Rights Act would not be applicable because it requires threats and intimidation and coercion having been developed in connection with street gangs. There is no state remedy here. May I ask one other question apropos of that? You say state law does not give an entitlement to an injunction. But if state law gives an avenue for litigating the merits of the claim, doesn't the simple authority, the traditional authority of courts, to give equitable relief entitle one a successful claimant to an injunction? No, because the only two potential state remedies we have, Your Honor, are under 30A, which is limited in the remedies that it can permit and would not extend to this, and the intentional interference tort claim, which does not permit for an equitable remedy. It permits only for monetary damages. You mean there is specific state law saying no equity in these cases? It doesn't say no equity in these cases. It deals with the nature of the remedies available and the nature of the remedies available under state law for intentional interference do not extend to an injunction. They extend to monetary relief. If the court would like us to provide further law on that, we will do so. But there is no state remedy that provides the relief that we are seeking here. That is only available to us under Section 1983. If the court wishes it, we will supplement. Each of you may supplement. It's your choice, but if you choose to do so, get us citations by Friday. We'll do so, Your Honor. 28J letter. Don't argue it. Understood.